JUSTICE ALBIN delivered the opinion of the Court.
**85 In the sexual assault trial of fourteen-year-old Alex, the family court admitted into evidence pursuant to N.J.R.E. 803(c)(27) -the tender-years exception to the hearsay rule-the video-recorded statement that seven-year-old John gave to police, in which he alleged that Alex had sexually touched him on a school bus.[1] John, **86 who suffers from severe developmental disabilities, who during out-of-court and in-court questioning was unable to distinguish between fantasy and reality, and who was declared incompetent as a witness by the court, was permitted to testify pursuant to the incompetency proviso of N.J.R.E. 803(c)(27). According to the proviso, "no child whose statement is to be offered in evidence pursuant to [ N.J.R.E. 803(c)(27) ] shall be disqualified" to testify, even though the child witness is deemed incompetent under the requirements of N.J.R.E. 601.
Based on John's recorded statement, his incompetent testimony, and an utterance he made to his mother's cousin, the family court adjudicated Alex delinquent of committing sexual assault.
The Appellate Division found that John's incompetency, as evident from his inability to answer truthfully even simple questions, rendered him unavailable for cross-examination. The Appellate Division therefore determined that the admission of the juvenile's in-court testimony and the video-recorded statement violated Alex's confrontation rights under the Sixth Amendment, as articulated in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny. The Appellate Division did not disturb the juvenile adjudication but rather remanded to the family court to determine whether sufficient evidence remained to support that adjudication.
*335 We now reverse Alex's delinquency adjudication on state-law grounds. We conclude that the juvenile's video-recorded statement was not admissible because the statement did not possess a sufficient probability of trustworthiness to justify its introduction at trial under N.J.R.E. 803(c)(27). The resolution of the admissibility of the recorded statement based on our evidence rules ultimately renders unnecessary the Appellate Division's constitutional analysis and determination. Striking the juvenile's recorded statement from the record does not leave sufficient evidence in the record to support, on any rational basis, the adjudication of delinquency against Alex. Accordingly, we reverse the judgment of the Appellate Division and hold that the sexual assault charge must be dismissed.
**87 The Appellate Division's critique, however, has led us to conclude that the incompetency proviso of the present version of N.J.R.E. 803(c)(27) is flawed, and therefore we remand that rule for review to the Supreme Court Committee on the Rules of Evidence.
I.
A.
Fourteen-year-old Alex was charged in a juvenile delinquency complaint with committing an act of sexual assault "by contact" on seven-year-old John on July 3, 2014 in violation of N.J.S.A. 2C:14-2(b). The complaint specifically alleged that Alex "on one occasion rubbed [John's] penis with his hand." The alleged assault occurred on a bus that was transporting eighteen special-needs children home from summer school. John has been diagnosed with autism and attention deficit hyperactivity disorder (ADHD), and his intellectual development corresponded to that of a three-year-old.
The State's case depended largely on a comment made by John to his mother's cousin Grace after he exited the bus, John's recorded statement given to a detective eighteen days later, and John's testimony at the juvenile trial. Alex's defense consisted of a general denial that the assault occurred. Among other witnesses, Alex presented the bus aide and the bus driver, both of whom suggested that the assault could not have happened as described by John, given the seating arrangements on the bus and their observations that day.
B.
The family court conducted a Rule 104 hearing,[2] pursuant to N.J.R.E. 803(c)(27), to determine the admissibility of the statements **88 John made to Grace and the detective. The only issue before this Court is the admissibility of John's recorded statement to the detective.
At the hearing, the State called Grace and Detective David Abromaitis of the Special Victims Unit of the Hudson County Prosecutor's Office, and the defense called Dr. Gerald Cooke, a board-certified forensic psychologist.
Grace testified that on July 3, 2014, she went to the bus stop to pick up John from summer school. She arrived after John had exited the bus. When she first observed John, Alex was holding him by the hand. That struck Grace as unusual, and she told the bus driver that he should not have let John off the bus until she arrived. While walking home, John told Grace that "[Alex] touched his belly button and pee-pee."
*336 Grace did not ask any follow-up questions, such as when and where the touching occurred or about the circumstances of the event. Grace later called John's mother and had no further discussion with John about the subject.
John's mother reported the incident to the Hoboken Police Department five days later.
Detective Abromaitis testified about his fourteen-minute recorded interview at the Hudson County Prosecutor's Office on July 21, 2014-eighteen days after the first report to Grace. The recording was played in its entirety at the hearing.
The interview began with Detective Abromaitis introducing himself as Dave, a police officer, and in response to the first perfunctory question, "What's up," John stated, "[Alex] touched my pee-pee." Detective Abromaitis explained that he did not conduct a pre-interview of John and met him for the first time when John entered the interview room-and therefore did not prompt John's response. When the detective followed up and asked who touched him, John responded, "[Alex] touched my pee-pee. He touched my belly button. He touched my belly button, and everybody all laughed at me." John indicated that the touching occurred "[u]nderneath my clothes." He also stated, "He touched **89 my eye. He touched my hand. He touched my eyebrows. He touched my nose like this. He touched my mouth. He touched my legs." However, when John showed the detective where he was touched using anatomical dolls, without prompting, he stated, "He touched at me by accident." On an anatomical drawing, John referred to his "butt" as both his belly button and his behind, and at one point he referred to his navel as his "dingaleg."
In response to a leading question, John recalled that he was at home when the touching occurred, until the detective asked another leading question, and then John recalled that he was on the bus. That colloquy is set forth below:
[DETECTIVE ABROMAITIS:] Okay[.] [C]an you tell me where you were when [Alex] touched you? Were you at home?
[JOHN:] Yes, I was at home.
[DETECTIVE ABROMAITIS:] Or were you somewhere else?
[JOHN:] Somewhere else [inaudible].
[DETECTIVE ABROMAITIS:] So where were you? When you say somewhere else, where's somewhere else?
[JOHN:] I don't know.
[DETECTIVE ABROMAITIS:] Okay[.] [W]ere you on the bus?
[JOHN:] Yes[.] [Y]es.[3]
Detective Abromaitis never asked John where he was seated on the bus or whether he was seated next to Alex.
John told the detective that he lived with "Chowder and Clarence" (cartoon characters), his "mom," his friend Jacob, and "dragons, too." In speaking with John's mother, the detective learned that they lived only with John's brother, Joe.
Dr. Cooke criticized Detective Abromaitis's interview techniques. He found fault with the detective's failure to inquire whether John could distinguish between the truth and a lie or **90 between fantasy and reality, particularly given that the child "cognitively" was more like a three-year-old *337 than a seven-year-old. Dr. Cooke also criticized the detective for asking leading questions that suggested that the incident occurred on the bus and for not making further inquiry when John said the touching was "by accident."
The family court ruled that John's recorded statement was sufficiently "trustworthy on the basis of the time[,] content and circumstances of the statement" and therefore would be admissible at trial, provided that John was available to testify. Although the court agreed with Dr. Cooke that Detective Abromaitis broke with the "ideal" protocol by not asking John "any questions to determine whether or not he understood the difference between telling the truth and telling the lie" and acknowledged that the detective asked an improper leading question that suggested to John that he was on the bus, it nevertheless found "that the statement is probably trustworthy in the language of [ N.J.R.E. 803(c)(27) ]."
The court also conditionally admitted into evidence the comment John made to Grace, finding that the statement "was completely spontaneous" and "probably trustworthy in the totality of the circumstances."
C.
The next day, the family court presided over the bench trial on the sexual assault charge lodged against Alex. The first witness called by the State was John. The court asked John some preliminary questions to explore his competency to testify under N.J.R.E. 601.
The inquiry made clear that John had difficulty responding to simple questions in an accurate or truthful way. For example, the court showed John a red toy. When asked whether if told the red toy was green that would be the truth, John replied, "yes." When asked the same question again, he said, "no." John also identified a tie as red, but when asked if told that the tie was green, whether **91 that would be the truth, he responded, "yes." The colloquy further developed that John had difficulty distinguishing between what is real and not real.
[COURT:] And what kind of toy is the other one, what is that?
[JOHN:] Dinosaur. A dinosaur.
[COURT:] A dinosaur, okay. Now if I told you that the dinosaur, if I told you that that toy that you say is a dinosaur is a chicken, would that be the truth?
[JOHN:] Yes.
[COURT:] It would be. Do you know the difference between the truth and a lie?
[JOHN:] Yes.
[COURT:] You do, what is it?
[JOHN:] I don't know.
[COURT:] You don't know?
[JOHN:] Yeah. Yes.
John's difficulty comprehending and responding to questions became further evident during the prosecutor's preliminary examination:
[PROSECUTOR:] Okay. Do you know-this is a courtroom, right?
[JOHN:] Yes.
[PROSECUTOR:] Now if I tell you we're at McDonald's, would that be the truth or would it be a lie?
[JOHN:] Yes.
[PROSECUTOR:] Yes, it would be the truth or a lie?
[JOHN:] Yes. Yes. Yes.
[PROSECUTOR:] Okay. When you talk to mommy, do you have to tell her the truth or do you tell her a lie?
[JOHN:] Yes.
[PROSECUTOR:] Which one do you do for her?
[JOHN:] I don't know. I don't know.
*338 Based on the exchanges above, the court concluded that John was not "competent to testify." Nevertheless, pursuant to N.J.R.E. 803(c)(27), which allows a juvenile witness to testify despite his incompetency, the court allowed the prosecutor to proceed with John's direct examination. The brief examination revealed that John could convey little reliable information. Although it was undisputed that John took a bus to summer school, he responded to a question about how he went to school by stating, "I was walking on the street."
**92 The prosecutor requested permission to recall John on another day, a request the court subsequently granted. The trial resumed several days later, and the prosecutor continued taking testimony from John. Again, John had difficulty answering simple questions. He stated that, "It's right," if the prosecutor referred to a spider as a flower. Additionally, the following example shows how susceptible John was to leading questions:
[PROSECUTOR:] If I tell you that this is black, is it really black?
[JOHN:] Yes. Yes. Yes.
[PROSECUTOR:] It's really black or is it red?
[JOHN:] It's red.
In response to a series of questions by the prosecutor, John responded that Alex, whom he identified in the courtroom, touched him on "my clothes, my pee-pee and my butt" while seated on the bus.
[PROSECUTOR:] [John], do you know why we're here today?
[JOHN:] Yes.
[PROSECUTOR:] Why are we here today?
[JOHN:] I don't know.
[PROSECUTOR:] Okay. Did anything happen this summer on the school bus?
[JOHN:] Yes.
[PROSECUTOR:] What happened?
[JOHN:] [Alex] touched me.
[PROSECUTOR:] Okay. And where did he touch you?
[JOHN:] Right here and right here and here.
[PROSECUTOR:] When you say here, what part of your body is that?
[JOHN:] My skin.
[PROSECUTOR:] Okay. And exactly what part?
[JOHN:] My-my clothes, my pee-pee and my butt.
[PROSECUTOR:] Were you sitting on the bus or were you standing?
[JOHN:] Sitting on the bus.
[PROSECUTOR:] Were there other people around?
[JOHN:] Yes.
[PROSECUTOR:] Who was around?
[JOHN:] [Alex] and Jay. That's it.
[PROSECUTOR:] Do you see [Alex] here today?
[JOHN:] Yes.
[PROSECUTOR:] Okay. Where do you see him?
**93 [JOHN:] On the bus.
[PROSECUTOR:] Do you see him here today?
[JOHN:] Yes.
[PROSECUTOR:] Can you do me a favor, [John]? I'm just going to ask you to stand up for one second and you tell me where you see him?
[JOHN:] Right there.
During the defense examination, John stated that the "little kids" were separated from the "big kids" on the bus and that as one of the smaller kids he sat at the front of the bus. John also admitted that another boy named Alex-not defendant-was on the bus and sat near him.
*339 Although the family court found that John lacked "competency" as a witness, it nevertheless concluded that John's incompetency did not render him unavailable as a witness. The court therefore declined to exclude from evidence John's statements to the detective and Grace or to dismiss the case.
The defense presented three witnesses.
Leslie Dorsey-Jones testified that she was the bus aide who traveled with Alex and John and approximately sixteen other children as they returned home from school on July 3. She stated that the "big kids," such as Alex, sat in the back of the bus and the "small kids" sat in the front of the bus-and that she sat in the middle, separating the two groups. She maintained that Alex "was sitting in the back, like behind me ..., but I know he wasn't sitting with the other little boy. I know that for a fact." She neither heard nor saw anything amiss.
Reuben Quinones, the school bus driver that day, corroborated that the little kids were seated in the front of the bus and big kids in the back. He identified Alex as a "big kid" who would have been in the back. Quinones periodically used his overhead mirror to view the interior of the bus and did not see or hear anything that gave him concern.
The final defense witness was Lisa Cruz, the transportation liaison for the Hoboken Board of Education, who confirmed that **94 two children named Alex were on the bus that day, one of whom went to elementary school and the other to high school.
At the conclusion of the case, the family court found "that the State established beyond a reasonable doubt that [Alex] purposely committed an act of sexual contact" by touching "[John's] penis underneath his clothes." The court further determined that the "intentional touching" was for the purpose of degrading or humiliating John and of sexually arousing or gratifying Alex. The court acknowledged that John had "the developmental cognition of a three-year-old," a "lack [of] competency to testify," and "was not able to distinguish or to articulate what his understanding was between right and wrong or the consequences of not telling the truth." Nevertheless, the court maintained that "when it came to the incident itself [John] understood the questions, and he answered coherently in a responsive way and consistently."
After adjudicating Alex delinquent, the court imposed a special condition that Alex attend a residential sex-offender treatment program.
D.
Alex appealed, claiming that the admission of John's statement to the detective and his incompetent testimony violated our evidence rules. In particular, Alex argued that John's out-of-court statement "was not sufficiently trustworthy for admission under the 'tender years' hearsay exception, N.J.R.E. 803(c)(27)," and that basing a juvenile adjudication on the uncorroborated hearsay testimony of an incompetent witness was reversible error. Alex also asserted that the adjudication was not supported by proof beyond a reasonable doubt. Finally, he maintained that John's incompetency rendered him unavailable for meaningful cross-examination and thus the admission of his hearsay statement violated the Sixth Amendment's Confrontation Clause, as construed by Crawford v. Washington.
**95 E.
The Appellate Division held that because John was incompetent to testify he was effectively unavailable for cross-examination, and therefore the admission of his incriminating testimonial statement to Detective *340 Abromaitis violated Alex's federal confrontation rights. State in Interest of A.R., 447 N.J. Super. 485, 490, 149 A.3d 297 (App. Div. 2016). The panel did not address any of the state-law evidentiary claims that Alex argued were grounds for reversing his adjudication.[4]
Applying the dictates of the Crawford line of cases, the panel first concluded that John's statement to Detective Abromaitis was testimonial, triggering the constitutional requirement that John be available for cross-examination.[5] Id. at 516-21, 149 A.3d 297. Second, the court determined John's incompetence did not afford Alex a meaningful opportunity to cross-examine John about the accusations he made to the detective. Id. at 521, 523, 149 A.3d 297. More broadly, the panel reached the conclusion that the incompetency proviso, when "applied to a child's hearsay statements made in a testimonial setting," violates the Sixth Amendment's Confrontation Clause. Id. at 516, 149 A.3d 297.
**96 Thus, after striking as evidence John's video-recorded statement and his testimony, the panel remanded to the family court to assess whether the State's remaining evidence is sufficient to meet its burden to prove the juvenile adjudication beyond a reasonable doubt. Id. at 525, 149 A.3d 297. In the interim, the Appellate Division did not disturb the delinquency adjudication. Ibid.
F.
We granted the State's petition for certification. 230 N.J. 425, 168 A.3d 1184 (2017). The John J. Gibbons Fellowship in Public Interest and Constitutional Law at Gibbons P.C. appeared as amicus curiae in support of Alex.
II.
A.
In seeking reversal of the Appellate Division's decision, the State advances two arguments.[6] First, it maintains that John, who functioned at the level of a three-year-old and was declared incompetent to testify, did not make a "testimonial statement"-a statement uttered with the primary purpose that it be used in a later criminal prosecution-and therefore the Confrontation Clause is inapplicable. In other words, the admissibility of John's recorded statement did not depend on whether he was subject to cross-examination. Second, the State contends that, regardless of the declaration of incompetency, John took the stand, and the defense subjected him to cross-examination, thus *341 satisfying the requirements of the Confrontation Clause.
B.
Alex counters that John's accusatory statement to the detective meets the standard of a testimonial statement and therefore its **97 admission required that John be available for meaningful cross-examination. Alex argues that meaningful cross-examination could not and did not occur because of John's incompetency, resulting in a violation of Alex's confrontation rights.
C.
We do not address the constitutional issues reached by the Appellate Division or by the parties and amicus curiae because this matter can be resolved by resort to our evidence rules.[7] We have often stated, "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation." Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80, 891 A.2d 1202 (2006). Thus, "we do not address constitutional questions when a narrower, non-constitutional result is available." USDA v. Scurry, 193 N.J. 492, 500 n.4, 940 A.2d 1164 (2008) (citing Randolph Town Ctr., 186 N.J. at 80, 891 A.2d 1202 ). More particularly, admission of hearsay statements should first be resolved under our rules of evidence. See State v. Branch, 182 N.J. 338, 354, 865 A.2d 673 (2005) ; see also State v. Buda, 195 N.J. 278, 298, 949 A.2d 761 (2008). Only if those hearsay statements satisfy the admissibility requirements of our evidence rules should we analyze whether the introduction of those out-of-court statements violates the Confrontation Clause. See Branch, 182 N.J. at 354, 865 A.2d 673 (finding hearsay statements inadmissible under our evidence rules and therefore opting not "to decide the constitutional challenge" advanced under Confrontation Clause).
Before addressing whether John's video-recorded statement to the detective met the admissibility requirements of N.J.R.E. 803(c)(27), we review the origin and evolution of the tender-years exception.
**98 III.
We begin with the language of the tender-years exception to the hearsay rule. N.J.R.E. 803(c)(27) provides:
A statement by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.
[ (emphasis added).]
The emphasized portion of the rule is known as the incompetency proviso. As is evident from the rule, no matter the nature of the incompetency of a child witness, that incompetency cannot disqualify *342 the child as a witness when the State seeks to introduce a prior statement of the child that meets the rule's other requirements. This version of the incompetency proviso differs from the one originally adopted by this Court and the Legislature.
The source of the current tender-years exception, including its incompetency proviso, is State v. D.R., 109 N.J. 348, 537 A.2d 667 (1988). In D.R., we recognized that, in a child-sex-abuse prosecution, "testimony by the victim is often the indispensable element of the [State's] case." Id. at 358, 537 A.2d 667. We determined that our evidence rules needed an additional "exception[ ] to the hearsay rule to authorize under certain conditions the admissibility of testimony relating the out-of-court statements of a child victimized by sexual abuse." Ibid. In fashioning a proposed rule, we looked to other jurisdictions' rules and statutes, the American Bar Association's recommendations, and learned commentators for guidance. Id. at 358-63, 537 A.2d 667.
In crafting this new exception to the hearsay rule, we acknowledged that "a prerequisite to the admissibility of a child's out-of-court **99 statement concerning sexual abuse is that it possess sufficient indicia of reliability" and that any "modification of the hearsay rule must adequately recognize and protect the substantial constitutional interests of defendants in such proceedings." Id. at 363, 537 A.2d 667. Importantly, we recognized that any new exception to the hearsay rule had to conform to the demands of the Confrontation Clause, which-in the pre- Crawford era-"required (1) availability of the declarant for cross-examination or a demonstration of unavailability, and (2) assurances of reliability." Id. at 366, 537 A.2d 667 ; see also Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
We also grappled with "[t]he most difficult question ... [:] whether a child's incompetency to testify at trial should preclude admissibility of the child's out-of-court statement." D.R., 109 N.J. at 365, 537 A.2d 667. We expressed concern that a child's incompetency, which would bar the child's testimony, might not constitute unavailability for purposes of Roberts and therefore would present an insurmountable obstacle to the admission of the child-victim's out-of-court statement. Id. at 369-70, 537 A.2d 667. That concern gave rise to the incompetency proviso. Although the language of today's tender-years exception, N.J.R.E. 803(c)(27), is almost identical to the one proposed in D.R. and adopted in Rule 63(33) (currently renumbered as N.J.R.E. 803(c)(27) ), the incompetency proviso is different.
The incompetency proviso proposed in D.R. and adopted in Rule 63(33) read as follows: "provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of paragraph (b) of Rule 17." Id. at 378, 537 A.2d 667 (emphasis added). Importantly, for our discussion here,
[w]e conclude[d] that the disqualification set forth in paragraph (b) of Evidence Rule 17 should not apply in a sexual abuse prosecution in which the victim's out-of-court statement is offered in evidence. A finding that a child-victim is "incapable of understanding the duty ... to tell the truth," and thus incompetent, is difficult to reconcile with a ruling that admits into evidence, insulated from cross-examination, the out-of-court statements of the same child made several months prior to trial.
**100 [ Id. at 369-70, 537 A.2d 667 (third alteration in original) (emphasis added) (quoting Evid. R. 17).]
*343 The proposed language was adopted in 1989 as Rule 63(33) and later recast as N.J.R.E. 803(c)(27) in 1993 when our evidence rules were renumbered to parallel the Federal Rules of Evidence.
Rule 17-the predecessor competency rule-corresponds to our current N.J.R.E. 601.[8] Rule 17 provided:
A person is disqualified to be a witness if the judge finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth.
The incompetency proviso in the tender-years exception adopted by D.R. rendered inoperative only paragraph (b) of the competency rule. That apparently was to address, in part, the notion that "[a] child's age in itself cannot render him incompetent as a witness," D.R., 109 N.J. at 369 n.8, 537 A.2d 667, and that there is a difference, for a child, between understanding "the duty" to tell the truth and having the capacity to tell the truth in a manner that is understandable by the trier of fact. The tender-years exception approved in D.R., however, did not allow a child deemed incompetent under paragraph (a) of Rule 17 to testify. Rule 17(a) corresponds directly with N.J.R.E. 601(a).
In May 1989, the Legislature adopted Rule 63(33) as proposed in D.R. See Joint Res. No. 4 (1989). The rule remained in effect, verbatim, until the 1993 renumbering of the Rules of Evidence, when Rule 63(33) became N.J.R.E. 803(c)(27) and Rule 17 became N.J.R.E. 601. Something more happened, however. The scope of the incompetency proviso was broadened by the removal of the **101 reference to paragraph (b). Thus, the proviso now reads, "no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601." N.J.R.E. 803(c)(27) (emphasis added). The consequences of this expansion are significant and far-reaching because it permits the testimony of a child victim not only incapable of understanding the duty to tell the truth but also incapable of distinguishing between fantasy and reality and of expressing himself in a manner to be understood by a judge or jury.
Nothing in the historical record of the evolution of the tender-years exception suggests that this Court or the Supreme Court Committee on the Rules of Evidence intended that a child rendered incompetent for reasons other than an inability to understand the duty to tell the truth would be permitted to testify at trial. Allowing the testimony of a child witness, who is declared incompetent because he "is incapable of expression concerning the matter so as to be understood by the judge and jury," would have been a significant change to N.J.R.E. 803(c)(27), yet it is never mentioned in the Evidence Committee's Report.
The record concerning the promulgation of N.J.R.E. 803(c)(27) provides no clear explanation or justification for the removal of the reference to paragraph (b) of the competency rule. When the Committee *344 recommended an alteration to the rule, it did so explicitly. Significantly, it recommended applying the rule to civil and juvenile proceedings. See Meeting Minutes, Supreme Court Committee on the Rules of Evidence 2 (May 17, 1993) (" N.J.R.E. 803 [ (c)(27) ] ... shall incorporate the present language of Evidence Rule 63(33) and enlarge its scope to make it applicable to civil and to juvenile proceedings. Approved by the Committee unanimously with one abstention."); see also Supreme Court Committee on the Rules of Evidence, Amendatory Report (May 17, 1993). The Evidence Committee gave no indication that it intended to provide for the admissibility of incompetent testimony lacking indicia of reliability because it was uttered by a sex-abuse victim **102 of tender years. The Committee's seeming silence on this important matter suggests that the Committee may not have focused on expanding the incompetency proviso in N.J.R.E. 803(c)(27).
The wholesale allowance of incompetent child testimony evidently prompted the Appellate Division to address the constitutional issue raised, in light of our current confrontation clause jurisprudence, which, under Crawford, prohibits the "admission of testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant [has] had a prior opportunity for cross-examination." 541 U.S. at 53-54, 124 S.Ct. 1354. Another point of concern is the incongruence between, on the one hand, generally disallowing incompetent child testimony, and on the other, allowing incompetent testimony without limitation if the child has uttered a prior statement. D.R. made clear that less exacting standards of competency should apply to a child witness, but did not go so far as to completely suspend the competency rule for child testimony.
Accordingly, we request that the Supreme Court Committee on the Rules of Evidence consider whether N.J.R.E. 803(c)(27) should be amended to conform to the evidence rule adopted in D.R. and whether any other amendment is advisable as a result of the concerns raised in this case.
IV.
We nevertheless must address the application of the current tender-years exception to the case before us. We cannot conclude that N.J.R.E. 803(c)(27), as presently constructed, authorized the admission of John's video-recorded statement to the detective.
Before admitting a child's out-of-court statement pursuant to N.J.R.E. 803(c)(27), the trial court must make certain findings at a Rule 104 hearing. The court must determine whether "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy." N.J.R.E. 803(c)(27). The statement's admissibility is also **103 conditioned on either the child testifying or, if the child is unavailable as a witness, on the presentation of "admissible evidence corroborating the act of sexual abuse." Ibid. When the child-victim's statement is a sexual accusation made to police, the statement generally will be classified as a "testimonial statement."[9] State v. Nyhammer, 197 N.J. 383, 411-12, 963 A.2d 316 (2009) (finding that child's videotaped statement alleging sexual crimes "-given to a law enforcement officer investigating *345 a crime-constitutes testimonial hearsay for Sixth Amendment purposes"). The admissibility of a child's testimonial statement, therefore, will be conditioned on the child taking the stand. State v. P.S., 202 N.J. 232, 249, 997 A.2d 163 (2010) (noting that admissibility of child victim's statement is conditioned on not only "judicial finding of trustworthiness," but also "opportunity to cross-examine the child at trial" (quoting State v. R.B., 183 N.J. 308, 318, 873 A.2d 511 (2005) ) ); see also State v. D.G., 157 N.J. 112, 124, 723 A.2d 588 (1999).
In the present case, the primary issue under N.J.R.E. 803(c)(27) is whether there was a probability that John's video-recorded statement to the detective was "trustworthy" based on "the time, content and circumstances of the statement." A court must "consider 'the totality of the circumstances' " in determining whether the statement is sufficiently trustworthy to warrant its admission. P.S., 202 N.J. at 249, 997 A.2d 163 (quoting State v. Roman, 248 N.J. Super. 144, 152, 590 A.2d 686 (App. Div. 1991) ). We have identified "a non-exclusive list of factors relevant to evaluating the reliability of out-of-court statements made by child victims of sexual abuse, including spontaneity, consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate."
**104 Id. at 249, 997 A.2d 163 (emphases added) (citing Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ). Clearly, one consideration in assessing a child's mental state must be whether the child is able to distinguish between fantasy and reality and whether the child can communicate in a way that shows the child has the mental capacity to tell the truth and to be understood by the trier of fact. A judicial declaration that a child is incompetent to testify should also have some bearing on determining the admissibility of a child's out-of-court statement.
V.
A.
Before applying the legal principles to the facts, we first set forth the standard of review that governs this appeal.
A trial judge's factual finding concerning the admissibility of a child's statement offered under N.J.R.E. 803(c)(27) is entitled to deference by an appellate court. See P.S., 202 N.J. at 250-51, 997 A.2d 163. Specifically, "a trial judge's finding that a child's statement meets the trustworthiness requirement of N.J.R.E. 803(c)(27)" should not be disturbed absent an abuse of discretion. Id. at 250, 997 A.2d 163. Thus, a factual finding "supported by sufficient credible evidence in the record" should be upheld. Ibid. (quoting State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) ). Only if that finding is clearly mistaken should an appellate court intervene, in the interest of justice, to correct the error. Id. at 250-51, 997 A.2d 163 ; Elders, 192 N.J. at 244, 927 A.2d 1250. In that circumstance, an appellate court may "appraise the record ... and make its own findings and conclusions." P.S., 202 N.J. at 251, 997 A.2d 163 (quoting Elders, 192 N.J. at 244, 927 A.2d 1250 ); see also State v. S.S., 229 N.J. 360, 381, 162 A.3d 1058 (2017) ("Appellate courts have an important role to play in taking corrective action when factual findings are so clearly mistaken-so wide of the mark-that the interests of justice demand intervention.").
**105 B.
Despite the deference that we must afford the family court's findings in this case, given the totality of the circumstances, *346 we cannot conclude that the court's assessment of the trustworthiness of John's video-recorded statement is supported by sufficient credible evidence in the record.
By the family court's own account, John, age seven, had "the developmental cognition of a three-year-old," a "lack of competency to testify," and "was not able to distinguish or to articulate what his understanding was between right and wrong or the consequences of not telling the truth." When John entered the interview room and met with Detective Abromaitis for the first time, eighteen days after the alleged bus incident, John responded to a greeting question, "What's up," with a targeted answer, "[Alex] touched my pee-pee." The detective did not suggest that answer because he had not conducted a pre-interview, but it appears that John was primed for the response. See State v. Michaels, 136 N.J. 299, 309, 642 A.2d 1372 (1994) ("[F]actors that can undermine the neutrality of an interview and create undue suggestiveness [include] ... the use of leading questions, and a lack of control for outside influences on the child's statements, such as previous conversations with parents or peers.").
During the interview, John had difficulty distinguishing between different body parts; for example, he called his belly button his "butt." He also claimed to live with cartoon characters, dragons, and a friend who in fact did not reside with him. Given John's developmental disabilities, the interview was challenging for the detective. Nevertheless, the detective did not make the most basic inquiries to assess whether John could tell the difference between the truth and a lie, or reality and fantasy. In response to one leading question, John stated that the touching occurred at home, and in response to another leading question, he stated it occurred on the bus-evidencing John's susceptibility to suggestive questioning. When John indicated that the touching happened by accident, the detective did not follow up.
**106 The family court conditionally admitted the video-recorded statement depending on John's availability as a witness.[10] During two days of questioning, John agreed with his interlocutor when it was suggested that a spider is a flower and that the color black is red. John stated that he walked on the street to summer school, although no one disputed that he took the bus, and he could not articulate whether it was right to tell the truth or a lie to his mother. John, moreover, agreed that the bigger kids were separated from the smaller ones on the bus and that another boy named Alex sat near him. Against this backdrop, John stated repeatedly that Alex touched his pee-pee, although without much elaboration. The sheer repetition of that claim-divorced from everything else-does not make the statement probably trustworthy.
We owe the trial court's evidentiary findings reasoned deference, not blind deference. In viewing the totality of the circumstances related to John's accusations in the video-recorded statement, we do not find that sufficient credible evidence supports the conclusion that John's statement was probably trustworthy. Therefore, we hold that the family court abused its discretion in allowing the video-recorded statement into evidence.
Under N.J.R.E. 803(c)(27), John was allowed to testify, despite his incompetence, *347 to afford protection to Alex's confrontation rights given the admission of the video-recorded hearsay accusation. The general rule barring an incompetent child witness from testifying adheres when the out-of-court statement is not admissible. In light of our determination that John's video-recorded statement was wrongly admitted into evidence, his trial testimony should not have been introduced for the purpose of confronting that statement. However, John's incompetent testimony still was **107 admissible because of the introduction of John's hearsay statement to Grace under N.J.R.E. 803(c)(27). In effect, the hearsay statement serves to bootstrap into evidence the incompetent testimony.
VI.
Last, after excising from the record John's video-recorded statement, the remaining evidence-even when viewed in the light most favorable to the State-is insufficient to support a sexual-assault adjudication beyond a reasonable doubt. See State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967).
The remaining evidence consists of John's incompetent testimony and Grace's hearsay testimony that, as John walked home with her after exiting the bus, he said, "[Alex] touched his belly button and pee-pee." Nothing more was said to Grace on the subject. The statement provides limited information and no context. For example, it does not tell us whether the alleged touching was accidental, which of the two Alexes did the touching, or when and where the incident occurred. In addition, no competent evidence corroborates John's single statement made to Grace.[11] Weighing against that evidence is the testimony of the bus aide who unequivocally averred that the big kids, such as Alex, sat in the back of the bus, and the little kids, such as John, sat in the front. The aide testified that Alex sat behind her and that she knew "for a fact" that Alex and John did not sit next to each other. The bus driver also confirmed that the children were separated by size and age, and both he and the aide stated that they neither saw nor heard anything amiss during the ride. Even John stated that the small boys sat at the front of the bus and he sat near a little boy named Alex. Indeed, two boys named Alex-one little and one big-were on the bus that day. Finally, the State provided no evidence that the touching-if there was a touching-was intentional and done **108 "for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d).[12]
Because we resolve this case on state-law grounds, we need not tackle the constitutional issue at the heart of the Appellate Division's opinion-whether the admission of John's incompetent testimony denied Alex his Sixth Amendment confrontation right. We neither address nor endorse the Appellate Division's constitutional analysis.
No purpose would be served by remanding this matter to the family court when we have determined that a rational factfinder could reach but one conclusion-that the remaining evidence is insufficient to support the sexual-assault adjudication against Alex.
*348 VII.
For the reasons expressed, we reverse the judgment of the Appellate Division, which remanded the case to the family court for further factfinding based on the remaining record. Because we find that the record clearly establishes that there is insufficient evidence to support the delinquency adjudication, we order that the delinquency charge against Alex be dismissed. We remand to the family court for the entry of that judgment.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

We use fictitious names to identify the juvenile defendant and the alleged victim, and the victim's relatives to protect their privacy.

N.J.R.E. 104(a) provides the vehicle for the court to conduct a hearing to determine the admissibility of evidence that is subject to a condition before the evidence may be introduced at trial.

The transcript of the video-recorded statement was prepared by the Prosecutor's Office and moved into evidence. The family court, however, indicated during its admissibility ruling that it "did not hear the juvenile say that the alleged incident happened at home" when listening to and reviewing the recording. As agreed to by the parties, defense counsel cross-examined Detective Abromaitis based on the transcript.

The Appellate Division recognized that "courts generally prefer to steer away from constitutional questions if their resolution is not essential to a case," but believed that Alex "concede[d] in his brief that the hearsay statements of [John] were admissible as a matter of state evidence law under N.J.R.E. 803(c)(27)." A.R., 447 N.J. Super. at 515, 149 A.3d 297. We do not find such a concession. To the contrary, Alex asserted in his brief that John's out-of-court statement to Detective Abromaitis "was not sufficiently trustworthy for admission under the 'tender years' hearsay exception, N.J.R.E. 803(c)(27)." Additionally, at oral argument before this Court, Alex's attorney asserted that the defense raised on direct appeal the unreliability of the video-recorded statement and argued it "should not have been admitted under 803(c)(27)."

The court noted that John's statement to his mother's cousin, Grace, was not testimonial and therefore admissible without the requirement of cross-examination. Id. at 521, 149 A.3d 297. Alex does not challenge the admission of that statement. Ibid.

The Attorney General represents the State before this Court, having superseded the Hudson County Prosecutor's Office, which represented the State before the family court and Appellate Division.

The state-law issues were fully briefed by the parties in the Appellate Division.

N.J.R.E. 601, the current rule on competency provides:
Every person is competent to be a witness unless (a) the judge finds that the proposed witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth, or (c) except as otherwise provided by these rules or by law.

A "testimonial statement" is defined as one made "when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

Because the juvenile case proceeded as a bench trial, there was a blending of Rule 104 hearing testimony and trial testimony. For instance, while conditioning the admission of John's video-recorded statement on his availability at trial, the court allowed Grace's testimony at the pre-trial motion hearing to serve as substantive evidence during the trial.

That big Alex was holding John's hand outside the bus hardly counts as evidence suggestive of a sexual assault.

A conviction under the sexual-assault statute, N.J.S.A. 2C:14-2(b), requires an "intentional touching ... for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d).