# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3033-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIUS AHEEBWA,

     Defendant-Appellant.

_____

          Submitted February 13, 2019 – Decided October 15, 2019

          Before Judges Fuentes and Vernoia.

          On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-02-0183.

          Howard P. Lesnik, attorney for appellant.

          Esther Suarez, Hudson County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, on the brief).

     The opinion of the court was delivered by

FUENTES, P.J.A.D.

In this child sexual assault case, we are asked to determine whether the trial judge erred when he: (1) denied defendant's motion to withdraw his guilty plea entered pursuant to a negotiated agreement with the State; (2) denied defendant's motion to suppress incriminating statements he gave to the detectives who were investigating the allegations of sexual abuse; and (3) granted the State's motion to admit the testimony of the child's mother and older brother pursuant to N.J.R.E. 803(c)(27). After reviewing the record developed before the trial court and in light of prevailing legal standards, we affirm.

A Hudson County grand jury indicted defendant Julius Aheebwa, charging him with first degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), second degree sexual assault, N.J.S.A. 2C:14-2(b), second degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and fourth degree child abuse, N.J.S.A. 9:6-1 and N.J.S.A. 9:6-3. The victim, M.O. (Maura),[1] was eight years old at the time of the assault. Defendant resided in a basement apartment in the same multi-family building where the victim resided with her family. Defendant babysat the victim and her two siblings between four and six in the evening while their mother was at work.

---

[1] We use a pseudonym to refer to the victim to protect her privacy and preserve the confidentiality of these proceedings. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9).

At approximately 8:00 p.m. on September 14, 2015, the Jersey City Police Department contacted detectives from the Hudson County Prosecutor's Office, Special Victims Unit (SVU), to report the abuse. SVU detectives interviewed the child and her mother on September 15, 2015. In a report filed at approximately 6:00 p.m. on September 14, 2015, SVU Detective Kristen Mikulak documented Maura's account of how the assault occurred. Defendant, whom Maura referred to as "Uncle Julius," lured the child into his bedroom by telling her she could use his four-year-old daughter's IPad. Once Maura was in defendant's basement apartment, Maura claimed he "started asking her questions about having a boyfriend and kissing." When Maura was inside defendant's bedroom:

> "Uncle Julius pulled up her skirt and took off her underwear and used his hand to touch her vagina. [Maura] demonstrated [how] Uncle Julius rubbed her vagina with his hand. She said Uncle Julius told her to lie down and he licked her private part twice and she started to cry. [Maura] said she was on top of the covers when this happened. She said he told her not to tell her mom or he would end up in jail.

Detective Mikulak's summary of Maura's description of the sexual assault is supported by the verbatim transcript of the child's interview conducted at the SVU's Duncan Avenue offices, at 10:53 p.m. on September 15, 2015.

A-3033-17T4

Defendant executed a waiver of his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), on September 14, 2015, the same day Maura claimed he sexually assaulted her. After obtaining defendant's signed Miranda waiver, three SVU Detectives interrogated defendant about the child's sexual assault allegations. The interrogation began at 9:40 p.m. on September 14, 2015. In the course of the interrogation, defendant admitted he sexually assaulted Maura by performing cunnilingus. When one of the Detectives asked defendant: "What made this happen?" Defendant responded: "I don't know, I think it's the devil."

The State moved to admit the statements Maura made to her mother and older brother about the molestation pursuant to N.J.R.E. 803(c)(27). The Hudson County Public Defender's Office assigned a pool attorney[2] to represent defendant at this hearing. The trial judge conducted an N.J.R.E. 104(a) hearing to determine whether "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy." N.J.R.E.

---

[2] The Office of the Public Defender is authorized to maintain and compensate "trial pools of lawyers" on a case-by-case basis. N.J.S.A. 2A:158A-7(c)-(d). Pool attorneys may be engaged "whenever needed to meet case load demands, or to provide independent counsel to multiple defendants whose interests may be in conflict." N.J.S.A. 2A:158A-9; see State v. Van Ness, 450 N.J. Super. 470, 490 (App. Div. 2017)

803(c)(27); see also State in Interest of A.R., 234 N.J. 82, 103 (2018). The judge found the State satisfied the standard for admissibility and granted the State's motion. The State also sought to admit the self-incriminating statement defendant gave to the SVU Detectives after waiving his Miranda rights. Defendant filed a cross-motion seeking to suppress the statement. The trial judge conducted an evidentiary hearing on October 12, 2016, and thereafter granted the State's motion and denied defendant's motion to suppress the statement.

The trial was scheduled to begin on April 11, 2017. Defendant was represented by private counsel. Before the judge started the jury selection process, defense counsel informed the trial judge that defendant had accepted the State's offer to plead guilty to first degree aggravated sexual assault pursuant to a negotiated agreement. At the plea hearing held that same day, the trial judge reviewed on the record every aspect of the plea the agreement with defendant; the judge also questioned defendant directly to ensure he understood the legal consequences of his decision to plead guilty. Defendant was thirty-nine years old at the time he pled guilty. He told the judge, under oath, that his educational background included "up to college."

A-3033-17T4

Defense counsel assisted defendant in completing and answering every question on the standard plea form. Question seventeen asked defendant: "Are you a citizen of the United States?" Defendant answered: "No." The trial judge addressed this issue directly with defendant to ensure he understood the immigration ramifications of this conviction and offered him the opportunity to discuss the matter with an attorney who specializes in immigration law. The judge also apprised defendant of other legal consequences of his decision to plead guilty, and asked him if he wanted more time to discuss the matter with his attorney.

> THE COURT: And if you need any time to speak to [defense counsel], just tell me, Judge, I want to speak with my lawyer. If I hear that, I'll stop and give you more time, do you understand that?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Now that's important, because once I accept your plea of guilty and once I sentence you this case is over, it is final, it is complete. Do you understand that?
>
> DEFENDANT: Yes.

At the conclusion of this thorough exchange with defendant, the judge asked the prosecutor to place the terms of the plea agreement on the record. As described by the prosecutor, in exchange for defendant pleading guilty to first

6

degree aggravated sexual assault, the State agreed to dismiss the remaining charges in the indictment and recommend the court sentence defendant to a term of nineteen years without parole, pursuant to the "Jessica Lunsford Act," as codified in N.J.S.A. 2C:14-2(d).  See State v. A.T.C, ___ N.J. ___, ___ (2019), slip op. at 2.

Moreover, given the sexual nature of the crime, defendant was also required to submit to a psychological evaluation at the Adult Diagnostic and Treatment Center in accordance with N.J.S.A. 2C:47-1, to determine whether his "conduct was characterized by a pattern of repetitive, compulsive behavior." Furthermore, although N.J.S.A. 2C:14-2(d) requires defendant to serve the nineteen-year term of imprisonment without parole, the prosecutor noted defendant remained subject to the parole supervision provisions of the No Early Release Act, N.J.S.A. 2C:43-7.2.  Finally, defendant was subject to the sex offender registration requirements under N.J.S.A. 2C:7-2.

The judge asked defense counsel if the prosecutor's recitation accurately summarized the terms of the plea agreement.

> DEFENSE COUNSEL: Judge, yes, that's the agreement.  I'm satisfied that Mr. Aheebwa understands the terms of the agreement.
>
> Each of the forms that we've submitted to the [c]ourt in detail ask questions that require an understanding and

> an answer to all those questions and what the consequences of all of those provisions are. I answered all of Mr. Aheebwa's questions with regard to that. He initialed and signed each page and I'm satisfied that he understands the terms of the plea agreement as recited by the Prosecutor and as indicated in all the plea forms that we've submitted to the [c]ourt.

The judge thereafter again addressed defendant directly to confirm defense counsel's representations. Through this meticulous process, the judge identified the material terms of the plea agreement, and took all of the steps necessary to ensure defendant understood the array of statutory requirements associated with this particular sexual offense.

Defendant provided the following factual basis in response to his attorney's questions:

> Q. We've discussed that you have to admit to the . . . assault, you understand that, correct?
>
> A. Yes.
>
> Q. So I'm going to ask you questions regarding that. First, I'm going to ask you if you were present in Jersey City on September the 14th of 2015?
>
> A. Yes. Yes.
>
> Q. And were you present in the company of a young girl who we stipulate at the time was less than 13 years of age, first name, [Maura]?
>
> A. Yes.

Q. And at that time and in that place and with that individual, did you commit an act of sexual penetration by performing cunnilingus on her body?

A. Yes.

Q. And did you that for your own sexual gratification?

A. Yes.

The prosecutor did not ask any questions. The trial judge found defendant's factual basis was sufficient to support his guilty plea to first degree aggravated sexual assault.

On October 6, 2017, defendant, represented by a new private counsel, moved to withdraw his guilty plea. In a certification dated that same day, defendant asserted he "was wrongfully accused by [Maura] of raping [her], which I did not do." Defendant alleged he "attempted to retain the services of a DNA expert" and had "advised" his previous attorney "of his intention to withdraw my guilty plea because the DNA was never reviewed by an expert my behalf." Defendant also claimed his attorney "induced me to plead guilty . . . [and] did not afford me the opportunity to consult with an immigration attorney prior to the entry of my guilty plea."

Defendant's new privately retained attorney advised the trial judge that defendant's motion to withdraw his guilty plea was based on two claims: (1)

defendant's <u>Miranda</u> rights were not "clearly waived;" and (2) "he always wanted

to have a D.N.A. expert."  Counsel did not argue or mention the standards

established by the Supreme Court in <u>State v. Slater</u>, 198 N.J. 145, 150 (2009).

By contrast, the prosecutor carefully based her argument on the four factors in

<u>Slater</u>, and urged the judge to find that "none of the <u>Slater</u> factors are present

here.  There's absolutely no grounds for this defendant to be able to retract his

guilty plea[.]"

At the conclusion of oral argument, the judge made the following findings:

> I don't have an affidavit from [defendant] telling me I'm innocent, I didn't do this but I'll presume, the first part, the second one I'll presume that he's maintaining his innocence here today, I'll presume that.  But there's not any affidavit telling me that he . . . and I don't know what he spoke to his attorneys about nor should I know what he spoke to his attorneys about, I don't listen in. I don't have anything from him telling me that I spoke to [two prior private defense attorneys] about a D.N.A. expert[.]
>
> . . . .
>
> There were discussions . . . on March 28, 2016 at which time Mr. Aheebwa was represented by [a pool attorney] . . . more than a year before [defendant] pled guilty, there was discussion on the record, these are my notes, new P.D. assigned. . . per the [p]rosecutor, the D.N.A. reports are positive for the defendant.  There was a new offer of 18 [years] with 18 [years without parole] as the D.N.A. is positive and then there is a year of not . . . anything . . .  not Mr. Aheebwa getting a D.N.A. expert,

not anything and this is not you, [addressing current defense counsel] you're not involved in the case but a defendant does have a responsibility for moving his own case[.]

In response to the judge's findings and observations, defense counsel requested the court to postpone the sentencing hearing to allow him the opportunity to address these concerns and present the necessary certifications from defendant. This prompted a strong objection from the prosecutor, who pointed out that "the victim's family is here again." The prosecutor emphasized that defendant had not made a colorable claim of innocence. After considerable discussion and argument from counsel, the judge decided to adjourn the sentencing hearing until October 20, 2017, to allow defendant the opportunity to cure these deficiencies.

For reasons not disclosed on the record, the hearing to adjudicate defendant's motion to withdraw his guilty plea did not reconvene until November 2, 2017. A certification from defendant was the only new evidence submitted. The prosecutor again noted for the record that defendant had not made a colorable claim of innocence as required by Slater. The Judge reviewed the lengthy, detailed discussions he had with defendant during the plea hearing, applied the four-factor analysis in Slater, 198 N.J. at 150, and denied defendant's motion to withdraw his guilty plea. On February 9, 2018, the judge sentenced

defendant in accordance with the plea agreement and as required by N.J.S.A. 2C:14-2(d), to a fifteen-year term of imprisonment without parole.

Against this factual backdrop, defendant raises the following arguments on appeal:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.
>
> POINT II
>
> THE TRIAL COURT ERRED BY ORDERING THE DEFENDANT'S STATEMENT TO THE HUDSON COUNTY PROSECUTOR'S OFFICE WAS ADMISSIBLE AT TRIAL.
>
> POINT III
>
> THE TRIAL COURT ERRED BY ORDERING THE STATEMENT MADE BY THE VICTIM TO 1) HER BROTHER J.O. AND 2) HER MOTHER A.O. AND 3) THE HUDSON COUNTY PROSECUTOR'S OFFICE WERE ADMISSIBLE AT TRIAL.

We reject these arguments and affirm. As a threshold issue, defendant pled guilty pursuant to a negotiated agreement with the State. Rule 3:9-3(f) provides in pertinent part:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving on the record the

right to appeal from the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, the defendant shall be afforded the opportunity to withdraw his or her plea.

The prosecutor placed the terms of the plea agreement on the record at the plea hearing. At the judge's request, defense counsel confirmed the prosecutor's recitation of the plea agreement was accurate. Defense counsel did not request or even mention that defendant preserved his right to challenge on appeal the trial court's pretrial rulings: (1) denying his motion to suppress the statement defendant gave to the SVU Detectives; and/or (2) granting the State's motion to allow Maura's mother and brother to testify at trial pursuant to N.J.R.E. 803(c)(27).

Rule 3:5-7(d) permits a defendant to appeal "from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty." However, unless otherwise expressly reserved as part of the plea agreement, the scope of the right to appeal under Rule 3:5-7(d) is limited to the denial of a motion to suppress physical evidence. Here, the record of the plea hearing shows defendant waived all of his constitutional rights as part of his plea agreement. Notwithstanding this waiver, we have reviewed defendant's arguments, including the argument challenging the trial judge's decision to deny

A-3033-17T4

his motion to withdraw his guilty plea, and conclude they all lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION