SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Leander Williams v. New Jersey State Parole Board** **(A-26-22) (087613)**

**Argued April 24, 2023 -- Decided August 3, 2023**

**FASCIALE, J., writing for a unanimous Court.**

In this appeal, the legal question is whether the New Jersey State Parole Board may impose a condition that mandates enrollment at a residential treatment program (RTP) for adult inmates who are entitled to administrative parole release under the Earn Your Way Out Act (EYWO Act), N.J.S.A. 30:4-123.55b to .55f.

Leander Williams pled guilty to non-violent third- and fourth-degree drug offenses. His primary parole eligibility date was approximately eight months after the EYWO Act became effective. During his prison sentence, Williams successfully completed multiple alcohol and drug rehabilitation programs, including an 87-day Alcoholics Anonymous program and a residential program in the Albert M. "Bo" Robinson Assessment and Treatment Center (Bo Robinson) for 187 days. After the Bo Robinson program and while remaining in the custody of the Department of Corrections, Williams resided at the Harbor Residential Community Release Program for 90 days for further rehabilitation.

Approximately one month before his primary parole eligibility date, a panel of the Parole Board certified that Williams met the "criteria for administrative parole release" under the EYWO Act, which entitled him to automatic administrative parole release. The panel imposed 21 general parole conditions and the "special" condition that Williams participate in an RTP for a minimum term of 180 days. Williams administratively appealed to the Parole Board, arguing that N.J.S.A. 30:4-123.59 precluded the panel from requiring an RTP as a condition of his administrative parole release under the EYWO Act. The panel upheld the imposition of residential treatment but recommended that the Board reduce his mandated "term" of 180 days to 90 days.

The Parole Board issued its final agency decision and upheld the requirement that Williams reside at the RTP, determining that N.J.S.A. 30:4-123.59(b)(1)(a) authorized the panel to impose an RTP and that N.J.S.A. 30:4-123.59(d) was "inapplicable." Williams appealed, and the Appellate Division affirmed the Parole Board's determination. The Court granted certification. 252 N.J. 481 (2023).

1

**HELD:** The Parole Board cannot mandate participation in an RTP for inmates administratively paroled under the EYWO Act. Although N.J.S.A. 30:4-123.59 generally authorizes the Parole Board to impose parole conditions on adult inmates who have been administratively released under the EYWO Act, an RTP is not among the conditions that can be imposed in that setting.

1. N.J.S.A. 30:4-123.53(a) details the process for release under the Parole Act. Under that provision, the Parole Board retains substantial discretion to deny parole if it finds the State makes a showing of lack of cooperation or a reasonable expectation of a future violation of parole conditions imposed pursuant to N.J.S.A. 30:4-123.59. The process governing release under the EYWO Act, which took effect on February 1, 2021, is different. "Administrative parole release" means the release of an adult inmate who has met the criteria set forth in N.J.S.A. 30:4-123.55d(a). In this streamlined parole process, parole-eligible inmates who satisfy the criteria must automatically be released by the Board. According to a press release, the EYWO Act "place[s] a greater focus on reentry[,] allowing us to reduce recidivism and improve individuals['] ability to integrate back into their communities." Like the Parole Act release provision, N.J.S.A. 30:4-123.55d(b) authorizes the imposition of parole conditions via reference to the entirety of N.J.S.A. 30:4-123.59. (pp. 14-17)

2. N.J.S.A. 30:4-123.59, which governs the imposition of parole conditions, has multiple subsections. Subsection (b)(1)(a) lists various mandatory and discretionary parole conditions. The Parole Board relies on the part of subsection (b)(1)(a) devoted to discretionary conditions as its sole authority to impose an RTP on Williams. That part is a non-exhaustive list stating that the Board member or panel certifying release "may impose any other specific conditions of parole deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior, including a requirement that the parolee comply with the Internet access conditions," and "[s]uch special conditions may include, among other things, a requirement that the parolee make full or partial restitution"; "that the parolee have no contact with the victim"; and "that the person shall not own or possess an animal for an unlawful purpose or to interfere in the performance of duties by a parole officer." Although RTPs are not among the conditions mentioned in subsection (b)(1)(a) of N.J.S.A. 30:4-123.59, they are directly addressed in subsection (d) of that statute, which provides that the Board "may parole an inmate to any residential facility funded in whole or in part by the State if the inmate would not otherwise be released pursuant to [N.J.S.A. 30:4-123.53] without such placement." (pp. 17-20)

3. The Parole Board and Appellate Division concluded that the language "include, among other things," in (b)(1)(a) should be read expansively to authorize the requirement that Williams reside at the RTP. In J.K. v. State Parole Board, the Court interpreted "include, among other things" to be terms of enlargement. 247 N.J. 120, 131-32 (2021). But that enlargement cannot be understood as infinite in

2

scope. When specific words follow more general words in a statutory enumeration, courts can consider what additional items might also be included by asking whether those items are similar to those enumerated. An RTP is not like the class of specific conditions expressed in (b)(1)(a). In an RTP, one's liberty is significantly more curtailed than being unable to access certain internet websites, being prohibited from having contact with a specific person, or being barred from possessing an animal. And N.J.S.A. 30:4-123.59(d) authorizes the imposition of an RTP as a parole condition "if the inmate would not otherwise be released pursuant to [N.J.S.A. 30:4-123.53] without such placement." Reading the statutes together, to impose an RTP for inmates who are ineligible under the EYWO Act, the Parole Board would generally have to show: (1) under N.J.S.A. 30:4-123.53(a), that "there is a reasonable expectation that the inmate will violate conditions of parole" pursuant to N.J.S.A. 30:4-123.59; (2) under N.J.S.A. 30:4-123.59(b)(1)(a), that an RTP is "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior"; and (3) under N.J.S.A. 30:4-123.59(d), that "the inmate would not otherwise be released [under N.J.S.A. 30:4-123.53] without such placement." If N.J.S.A. 30:4-123.59(d) was "inapplicable" and "irrelevant," as suggested by the Parole Board, then it would be easier to impose mandatory "terms" of residential treatment on low-level offenders who qualify for automatic release under the EYWO Act than it is for the Parole Board to impose the same residence "terms" for adult inmates convicted of more serious offenses who are not eligible for administrative parole. That would be illogical. (pp. 20-27)

4. It is true that the Legislature expressed concern about recidivism and recognized a need to facilitate reentry in enacting the EYWO Act. See, e.g., N.J.S.A. 30:1B-6.10(a). At the same time, however, the Legislature expressly contemplated that residential treatment could be completed during incarceration. Upon completion of the programming and satisfaction of the additional requirements set forth in N.J.S.A. 30:4-123.55d, the EYWO Act contemplates that adult inmates earn their way out -- subject, of course, to sanctions for violation of parole conditions. And the Legislature has not granted leave to impose an RTP on those inmates who successfully earned their way out through that Act. Williams has fully satisfied and complied with the legislatively imposed process for his release, and his continued outpatient rehabilitation can be and has been prescribed by the Board. But the Board's prescriptions must remain within the limits imposed by the Legislature, which do not include an RTP. It is now time for Williams' "successful integration as a productive, law-abiding citizen." N.J.S.A. 30:4-123.55c. (pp. 27-30)

**REVERSED and REMANDED to the Parole Board.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-26 September Term 2022
### 087613

Leander Williams,

Appellant-Appellant,

v.

New Jersey State Parole Board,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 24, 2023 | August 3, 2023 |

John P. Flynn, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John P. Flynn, on the brief).

Stephanie Cohen, Assistant Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel and on the briefs, and Christopher C. Josephson, Deputy Attorney General, on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

1

Katherine Beilin argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Katherine Beilin and CJ Griffin, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, the legal question is whether the New Jersey State Parole Board may impose a condition that mandates enrollment at a residential treatment program (RTP) for adult inmates who are entitled to administrative parole release under the Earn Your Way Out Act (EYWO Act), N.J.S.A. 30:4-123.55b to .55f.

The Parole Board found that it had such authority under N.J.S.A. 30:4-123.59(b)(1)(a) and required that Leander Williams successfully complete a minimum term of 180 days at an RTP upon his parole release. Williams argues that the Parole Board's reliance on N.J.S.A. 30:4-123.59(b)(1)(a) is misplaced. He maintains that N.J.S.A. 30:4-123.59(d) precludes requiring participation in an RTP and that the Parole Board failed to correctly read N.J.S.A. 30:4-123.59 in its entirety. Williams also contends that, by requiring him to reside at an RTP for a minimum of 180 days after he earned his way out of prison, the Parole Board failed to differentiate between automatic administrative parole release under the EYWO Act and parole in the normal course under the Parole Act of 1979, N.J.S.A. 30:4-123.45 to .76. The

2

Appellate Division agreed with the Parole Board that N.J.S.A. 30:4-123.59(b)(1)(a) authorized an RTP as a condition of release under the EYWO Act.

We hold that the Parole Board cannot mandate participation in an RTP for inmates administratively paroled under the EYWO Act. Our holding harmonizes the processes for release established by the EYWO Act and the Parole Act with N.J.S.A. 30:4-123.59, which permits the Parole Board to impose conditions for inmates released on parole under both Acts. Reading those provisions together, we conclude that although N.J.S.A. 30:4-123.59 generally authorizes the Parole Board to impose parole conditions on adult inmates who have been administratively released under the EYWO Act, an RTP is not among the conditions that can be imposed in that setting.

We therefore reverse.

## I.

### A.

Williams has struggled with substance abuse for years. The appellate court noted that he has a long drug-related criminal history. In this case, police charged him with non-violent third- and fourth-degree drug offenses. Williams then pled guilty to those charges and received an aggregate eight-year prison term with four years of parole ineligibility in accordance with his

3

negotiated plea agreement. His primary parole eligibility date was October 21, 2021, which was approximately eight months after the EYWO Act became effective.

During the prison sentence, Williams successfully completed multiple alcohol and drug rehabilitation programs while in the custody of the New Jersey Department of Corrections (DOC). As an inmate convicted of low-level drug offenses who did not commit any prohibited acts or serious disciplinary infractions while imprisoned, Williams not only addressed his longstanding substance abuse problem, but also focused on re-entry into society. Williams therefore participated in meaningful and relevant rehabilitation programs before reaching his primary parole eligibility date.

For example, he successfully completed an 87-day Alcoholics Anonymous (A.A.) program. Then, while under the custody of the DOC, Williams resided in the Albert M. "Bo" Robinson Assessment and Treatment Center (Bo Robinson) for 187 days. Bo Robinson's Clinical Director confirmed in writing that Williams attended his weekly caseload group sessions, his biweekly individual counseling sessions, and his Relapse Prevention specialty group session. After Williams completed the Bo Robinson program, the DOC transferred him to the Harbor Residential Community Release Program (Harbor House) for further rehabilitation.

4

While remaining in the DOC's custody, he resided at the Harbor House for 90 days. According to its program counselor, the Harbor House is a "residential treatment and community release program" that "provides treatment and training to individuals [like Williams] who are preparing to re-enter society." Counseling at the Harbor House "focuses on changing criminal and addictive behaviors." At the Harbor House, residents are subjected to random drug testing.

B.

Approximately one month before his primary parole eligibility date, a panel of the Parole Board reviewed Williams' case to determine whether he was eligible for parole under the EYWO Act. The panel certified that he met the "criteria for administrative parole release." That determination entitled him to automatic administrative parole release under the Act.

At the same time, the panel established conditions for release. In accordance with N.J.S.A. 30:4-123.59(b)(1)(a), the panel imposed twenty-one general parole conditions, which, pursuant to that subsection, were enumerated in Williams' Certificate of Administrative Release. Williams agreed to abide by those conditions, including, for example, obeying all laws; refraining from the purchase, use, possession, distribution, or administration of any narcotic drug or controlled dangerous substance; consenting to legal law enforcement

5

searches for contraband; and submitting to drug and alcohol testing as directed by his parole officer.

Beyond the twenty-one general parole conditions, the panel also imposed the "special" condition that Williams participate in an RTP for a minimum term of 180 days. It specifically required that Williams successfully complete the Re-Entry Substance Abuse Program (RESAP) at Kintock-Newark. The panel also mandated that Williams comply with an aftercare discharge treatment plan "as developed by KINTOCK-NEWARK." It imposed participation in an RTP even though Williams had earned his way out of prison, in part, by successfully completing rehabilitation programs while serving his aggregate prison sentence.

## C.

In October 2021, Williams administratively appealed to the Parole Board and objected to the imposition of the RTP condition. Williams' counsel argued that N.J.S.A. 30:4-123.59 precluded the panel from requiring an RTP as a condition of his administrative parole release under the EYWO Act because, although parolees under the EYWO Act are supervised and subject to various conditions under N.J.S.A. 30:4-123.59, mandatory participation in an RTP cannot be one of them. He differentiated the legislatively streamlined, yet

6

rigorous parole process available under the EYWO Act and the general parole process for adult inmates under the Parole Act.

In November 2021, the panel of the Parole Board considered Williams' administrative appeal. On the one hand, it recognized that he had a "substantial criminal history involving drugs." On the other hand, it acknowledged that Williams had participated in relevant rehabilitation programs while serving his sentence. Although the panel upheld the imposition of residential treatment, it recommended that the Board reduce his mandated "term" of 180 days at Kintock-Newark be reduced to a "term of 90 to 180 days."

Williams' counsel wrote to the Parole Board, informed it that the panel rejected his administrative appeal, and requested that the Parole Board issue a final decision. He requested that the Parole Board address his argument that, under N.J.S.A. 30:4-123.59(d), the panel cannot parole Williams to an RTP.

### D.

In December 2021, the Parole Board issued its final agency decision and upheld the requirement that Williams reside at the RTP. It acknowledged that Williams was entitled to administrative parole release under the EYWO Act. The Parole Board noted that N.J.S.A. 30:4-123.55d(b) authorizes a panel of the Parole Board to subject inmates paroled administratively to "provisions and

7

conditions" established in accordance with N.J.S.A. 30:4-123.59. But instead of relying on N.J.S.A. 30:4-123.59(d), it determined that N.J.S.A. 30:4-123.59(b)(1)(a) authorized the panel to impose participation in an RTP. The Parole Board concluded that N.J.S.A. 30:4-123.59(d) was "inapplicable." It is unclear whether the Parole Board accepted the recommendation that Williams' "term" at the RTP be reduced from a minimum of 180 days to a "term of 90 to 180 days."

E.

Williams appealed, and the Appellate Division affirmed the Parole Board's determination. The Appellate Division acknowledged that for adult inmates released under the EYWO Act, N.J.S.A. 30:4-123.55d(b) permits a panel of the Parole Board to establish parole conditions in accordance with N.J.S.A. 30:4-123.59. Without expressly analyzing subsection N.J.S.A. 30:4-123.59(d), which is the only part of that statute that explicitly mentions "residential facility," the appellate court agreed substantially with the Parole Board that N.J.S.A. 30:4-123.59(b)(1)(a) authorized participation in an RTP as a condition for parole of adult inmates under the EYWO Act. Relying on this Court's decision in J.K. v. State Parole Board, 247 N.J. 120, 131-32 (2021), the Appellate Division reasoned that the list of parole conditions enumerated

8

in N.J.S.A. 30:4-123.59(b)(1)(a), which did not mention "residential facility," should be read expansively to authorize the imposition of residential treatment.

We granted Williams' petition for certification. 252 N.J. 481 (2023). We also granted motions by the American Civil Liberties Union of New Jersey (ACLU) and Association of Criminal Defense Lawyers of New Jersey (ACDL) to appear as amici curiae.

## II.

On appeal, Williams maintains that we must harmonize the relevant statutes. He asserts that under N.J.S.A. 30:4-123.55d(b), the EYWO Act permits a panel of the Parole Board to establish parole conditions for administratively released adult inmates in accordance with N.J.S.A. 30:4-123.59. But he contends the Parole Board mistakenly relies only on subsection (b)(1)(a) of that statute, and that it erroneously determined that subsection (d) is "inapplicable." Williams urges us to read the entirety of N.J.S.A. 30:4-123.59, especially subsection (d), which he maintains cannot permit mandated participation in an RTP because he was "otherwise [automatically] released" under the EYWO Act. Williams emphasizes that the structure and purpose of the EYWO Act established a streamlined parole process for inmates like him who are low-level offenders, behaved well in prison, and completed relevant and rigorous rehabilitative programs while serving their prison terms. He

9

contends that additional "confinement" to an RTP for inmates who have earned their way out and are therefore entitled to release under the EYWO Act amounts to a strained misapplication of the relevant statutes.

The ACLU and ACDL agree with Williams' position that the EYWO Act streamlined the parole process for, in general, (1) low-level offenders; (2) who have been infraction-free; and (3) who have completed relevant rehabilitation programs while imprisoned. If eligible under the EYWO Act, amici argue, those inmates are automatically entitled to parole release, noting that the EYWO Act incentivizes eligible adult inmates to work hard during imprisonment to prepare for reentry into society. The ACLU and ACDL contend that a transfer from prison to an RTP, which is similar to "confinement," does not constitute release and thus frustrates the EYWO Act's structure and purpose. They say, "Out means out."[1]

The Parole Board counters that "the term 'administrative parole release' as it is defined in [the] EYWO Act refers only to the legislatively created

---

[1] The ACLU and ACDL assert due process arguments not raised by the parties. Although we do not reach those contentions, see Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 114 n.6 (2023), we note that our conclusion that mandated participation in an RTP is unauthorized for EYWO Act parolees renders amici's additional assertions moot. See State in Int. of A.R., 234 N.J. 82, 97 (2018) ("We have often stated, '[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation.'" (alteration in original) (quoting Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006))).

10

process for releasing eligible persons through the parole system without a formal parole consideration hearing; it introduces no changes to what parole ultimately entails."  The Board maintains that it therefore has authority under N.J.S.A. 30:4-123.59(b)(1)(a) to require adult inmates paroled under the EYWO Act to complete residential treatment because the list of parole conditions that the Board may impose under that section is not exhaustive.  In the Board's view, N.J.S.A. 30:4-123.59(d) serves solely as a grant of permission to parole inmates who would not otherwise be released under the Parole Act to an RTP; the section is "inapplicable" and "irrelevant" to the conditions that may be imposed on inmates who earn release under the EYWO Act.

In response to amici's emphasis on N.J.S.A. 30:4-123.55d(a)(3), a provision that sets completion of any relevant rehabilitation programs at the correctional facility as a condition for automatic release under the EYWO Act, the Board contends that the condition "does not preclude the Board from determining that additional programming is necessary to ensure that any parolee successfully completes the parole period."  The Board also stresses that "[t]here are significant differences in the experiences of parolees and incarcerated persons at [RTPs]."

11

III.

This appeal requires us to answer the legal question of whether, under the relevant statutes, the Parole Board may impose a special condition mandating participation at an RTP for adult inmates who are entitled to administrative parole release under the EYWO Act. Although we ordinarily employ a deferential standard when reviewing a Parole Board administrative determination in the specialized area of parole supervision, J.I. v. State Parole Bd., 228 N.J. 204, 230 (2017), in matters of statutory interpretation -- like here -- our review is de novo, Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017).

Discerning "the Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). We "ascribe to the statutory words their ordinary meaning and significance." Ibid. "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" Id. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

A statute's words and phrases should "be read and [interpreted] with their context." State v. Lopez-Carrera, 245 N.J. 596, 613 (2021) (quoting N.J.S.A. 1:1-1). We do not read words in isolation; instead, we consider "them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (quoting DiProspero, 183 N.J. at 492).

Our approach to interpretation of related statutes is well-settled. When more than one statute deals with the same subject -- like here -- we interpret them together "in pari materia . . . as a unitary and harmonious whole." Jones v. Morey's Pier, Inc., 230 N.J. 142, 164 (2017) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15 (2005)); see also State v. Gomes, 253 N.J. 6, 11 (2023) (harmonizing the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act with pretrial intervention and expungement statutes). In addition to referencing the same subjects, N.J.S.A. 30:4-123.53(a) (releasing adult inmates on parole) and N.J.S.A. 30:4-123.59 (granting the Board statutory authority for imposing conditions of release and parole supervision) cross-reference one another.

Moreover, whole-act interpretation implicates "other rules of statutory interpretation." Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 46:5, at 236-37 (7th ed. 2022). "A statute or provision relating to a specific subject may be understood as an exception to a

statute or provision relating to a general subject." Id. at 238. Thus, "[w]here one section of an act deals with a subject in general terms [like 59(b)(1)(a)] and another deals with a part of the same subject in a more detailed way [like 59(d)], the two always should be harmonized." 2A Sutherland § 47:11, at 336.

A.

The key related provisions here are the statutes that govern release under the Parole Act, N.J.S.A. 30:4-123.53(a), and the EYWO Act, N.J.S.A. 30:4-123.55d, and the statute cross-referenced by both provisions as governing the imposition of conditions upon parolees, N.J.S.A. 30:4-123.59.

We begin with the statutes that govern release under the Parole and EYWO Acts. N.J.S.A. 30:4-123.53(a) details the process for release under the Parole Act. That statute provides that

> [a]n adult inmate who is not eligible for administrative parole release pursuant to [N.J.S.A. 30:4-123.55d] shall be released on parole at the time of primary parole eligibility, unless information supplied in the report filed pursuant to [N.J.S.A. 30:4-123.54] or developed or produced at a hearing held pursuant to section [N.J.S.A. 30:4-123.55] indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole imposed pursuant to [N.J.S.A. 30:4-123.59] if released on parole at that time.
>
> [N.J.S.A. 30:4-123.53(a) (emphases added).]

14

Under the release provision of the Parole Act, the Parole Board thus retains substantial discretion to deny parole if it finds the State makes a showing of lack of cooperation or a reasonable expectation of a future violation of parole conditions.

The process governing release under the EYWO Act, which went into effect on February 1, 2021, is different. Under the EYWO Act, the Parole Board does not have the discretion to deny parole that it otherwise has under the Parole Act. Indeed, the EYWO Act facilitates meaningful opportunities for adult inmates to earn their way out of prison, rather than being subject to the normal parole process under the Parole Act.

"'Administrative parole release' means the release of an adult inmate who has met the criteria" set forth in N.J.S.A. 30:4-123.55d(a), and it "occurs after a hearing officer reviews the pre[-]parole report and the inmate is certified for release by an assigned member of the board panel." N.J.S.A. 30:4-123.55c. Unlike parole under the Parole Act, a hearing is not required for inmates who meet the criteria. N.J.A.C. 10A:71-3.22(b). In this streamlined parole process, when a primary eligibility date approaches, a hearing officer simply reviews the pre-parole report against objective criteria to determine whether to recommend administrative parole release. Parole-eligible inmates who satisfy the criteria must automatically be released by the Board.

15

Specifically, an adult inmate must be released administratively if

> (1) the inmate has not been previously convicted of, adjudicated delinquent for, or is currently serving a sentence imposed for any crime enumerated in [any of the cited statutes];
>
> (2) the inmate has not committed any prohibited acts required to be reported to the prosecutor pursuant to regulations promulgated by the commissioner during the current period of incarceration, and has not committed any serious disciplinary infraction, designated in regulations promulgated by the commissioner as a prohibited act that is considered to be the most serious and results in the most severe sanctions, within the previous two years;
>
> (3) the inmate has completed relevant rehabilitation programs, as determined by the Department of Corrections and State Parole Board, available at the correctional facility or applied for but was unable to complete or was denied access to these programs due to circumstances beyond the inmate's control including, but not limited to, capacity limitations or exclusionary policies of these programs; and
>
> (4) crime victims have received notification as required by law.
>
> [N.J.S.A. 30:4-123.55d(a).]

A press release accompanying the rollout of the EYWO Act noted sponsors' views that the Act "place[s] a greater focus on reentry[,] allowing us to reduce recidivism and improve individuals['] ability to integrate back into their communities." Press Release: On Martin Luther King, Jr. Day, Governor

16

<u>Murphy Signs Criminal Justice Reform Legislation</u> (Jan. 20, 2020), https://www.nj.gov/governor/news/news/562020/approved/20200120a.shtml. Co-sponsors of the EYWO Act characterized the legislative parole reforms as creating "a pathway to reentry and providing access to needed resources" for parolees, <u>ibid.</u>, and declared that "[c]omprehensive and effective rehabilitation programs will restore hope, dignity, and provide former inmates the second chance they deserve to do better once released," <u>ibid.</u>

Pursuant to the statute's next subsection, N.J.S.A. 30:4-123.55d(b), an adult inmate administratively released on parole under the EYWO Act "shall, during the term of parole supervision, remain in the legal custody of the Commissioner of Corrections" and shall "be supervised by the Division of Parole of the State Parole Board." Such individuals are "subject to the provisions and conditions established by the appropriate board panel in accordance with the procedures and standards set forth in [N.J.S.A. 30:4-123.59]." <u>Ibid.</u> Thus, N.J.S.A. 30:4-123.55d(b) authorizes parole conditions (some mandatory and some discretionary) through reference to the entirety of N.J.S.A. 30:4-123.59, just like N.J.S.A. 30:4-123.53(a), which prescribes the mechanism for release under the Parole Act.

B.

N.J.S.A. 30:4-123.59, which governs the imposition of parole conditions by the Board, has multiple subsections. Two of them are relevant to this appeal.

Subsection (b)(1)(a) enumerates various mandatory and discretionary parole conditions. It also grants broader authority to set parole conditions, because a panel of the Parole Board can establish conditions that "include, among other things," the enumerated conditions. Subsection (b)(1)(a) requires each parolee to abide by conditions of parole established by the appropriate panel of the Parole Board and requires those conditions to be enumerated in writing in an inmate's certificate of parole. Indeed, the panel enumerated those conditions in writing when it administratively released Williams under the EYWO Act.

The first part of subsection (b)(1)(a) addresses conditions that the panel of the Parole Board "shall" impose. This part of subsection (b)(1)(a) states in pertinent part that such conditions

> shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime, a requirement that the parolee will not own or possess any firearm . . . , a requirement that the parolee refrain from the unlawful use, or the possession or distribution of a controlled dangerous substance, controlled substance analog or imitation controlled dangerous

substance . . . , a requirement that the parolee <u>obtain permission from his parole officer for any change in his residence</u>, and a requirement that the parolee <u>report at reasonable intervals</u> to an assigned parole officer.

[(emphases added).]

Notably, residential treatment is not listed as a requirement.

The second part of subsection (b)(1)(a) addresses "other specific conditions" that the panel of the Parole Board "may" impose. The Parole Board relies on this part of subsection (b)(1)(a) as its sole authority to impose an RTP on Williams. This part of (b)(1)(a) -- also a non-exhaustive list that "include[s], among other things," enumerated special conditions -- provides in part that

> based on prior history of the parolee . . . , the member or board panel certifying parole release pursuant to [N.J.S.A. 30:4-123.55] <u>may impose any other specific conditions of parole deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior</u>, <u>including</u> a requirement that the <u>parolee comply with the Internet access conditions</u> set forth in paragraph (2) of this subsection. Such special conditions <u>may include, among other things</u>, a requirement that the parolee make <u>full or partial restitution</u>, the amount of which restitution shall be set by the sentencing court upon request of the board. In addition, the member or board panel certifying parole release may, giving due regard to a victim's request, impose a special condition that the parolee have <u>no contact with the victim</u>, which special condition may include, but need not be limited to, restraining the parolee from entering the victim's residence, place of employment, business or school, and from harassing or

19

> stalking the victim or victim's relatives in any way. Further, the member, board panel or board certifying parole release may impose a special condition that the person shall <u>not own or possess an animal for an unlawful purpose</u> <u>or</u> to <u>interfere in the performance of duties by a parole officer</u>.
>
> [(emphases added).]

Once again, participation in an RTP is not listed.

Although RTPs are not among the parole conditions expressly mentioned in subsection (b)(1)(a) of N.J.S.A. 30:4-123.59, they are directly addressed in subsection (d) of that statute, which provides, in pertinent part, that the Board "<u>may parole an inmate to any residential facility</u> funded in whole or in part by the State <u>if the inmate would not otherwise be released</u> pursuant to [N.J.S.A. 30:4-123.53] <u>without such placement</u>." (emphases added).

## C.

Against the backdrop of the relevant statutes, the question at the heart of this appeal turns on the relationship between 30:4-123.59(b)(1)(a) and (d). The Board argues that (d) extends its authority under (b)(1)(a) to release to RTPs certain inmates who would otherwise have to remain incarcerated at a correctional facility. Williams and amici contend that (d) is instead the sole provision granting permission to impose a post-parole RTP, which cannot be imposed under (b)(1)(a), such that RTPs can be imposed only upon those inmates specified in (d).

20

The release provisions of both the Parole Act, N.J.S.A. 30:4-123.53(a), and the EYWO Act, N.J.S.A. 30:4-123.55d(b), cross-reference the entirety of 30:4-123.59 and therefore do not provide an answer. Nor do subsections (b)(1)(a) and (d) of 30:4-123.59 provide explicit guidance. Subsection (d) does not refer to the imposition of an RTP as a "condition of parole" or otherwise address section (b)(1)(a); and subsection (b)(1)(a) does not expressly include RTPs among, or exclude them from, the conditions of parole listed in that section. Moreover, "[a] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." 2A Sutherland § 46:5, at 225-26; see also Ryan v. Renny, 203 N.J. 37, 58 (2010).

The Parole Board and Appellate Division concluded, relying on J.K., that the language "include, among other things," in (b)(1)(a) should be read expansively to authorize the requirement that Williams reside at the RTP for a minimum "term" of 180 days upon release on parole under the EYWO Act. In J.K., this Court interpreted "include, among other things" to be terms of enlargement, not limitation, regarding the listed conditions. 247 N.J. at 131. The definition of "include" warranted that interpretation. See 2A Sutherland § 47:7, at 310 ("The word 'includes' is usually a term of enlargement, and not of limitation, and conveys the conclusion that there are other items includable,

21

though not specifically enumerated."); Black's Law Dictionary 912 (11th ed. 2019) ("The participle including typically indicates a partial list."); New Oxford American Dictionary 879 (3d ed. 2010) (noting that the use of "including or includes implies that there is more than what is listed").

But although the phrase "include, among other things," is a term of enlargement, that enlargement cannot be understood as infinite in scope. At minimum, the Constitution would serve as a final backstop for the imposition of parole conditions, and our conclusion in J.K. that the term indicates the Legislature "did not intend to specify every permissible condition of parole that the Board may impose" implicitly makes clear that not every imaginable condition would be "permissible." See 247 N.J. at 131 (emphasis added). Subsection (b)(1)(a) itself, moreover, limits the imposition of "any other specific conditions" by the Board to those "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior." Although the Appellate Division here relied on J.K. to determine that the Board could impose conditions beyond those explicitly listed, its analysis overlooks a key distinction: in J.K., "[n]o statutory impediment emerge[d] from the Parole Act that denie[d] the Board the ability to permit international relocation of a . . . parolee . . . who enjoys dual citizenship with another country, while maintaining Board supervision." Id. at 132.

22

Traditional principles of statutory interpretation teach that limits can be found in the examples explicitly provided in each list, as well as in the context in which the list appears. In interpreting non-exhaustive lists within a statutory scheme, courts may apply a canon of statutory interpretation known as ejusdem generis, which literally means "of the same kind." 2A Sutherland § 47:17, at 364-86; see, e.g., Samantar v. Yousuf, 560 U.S. 305, 317 (2010) (determining that 28 U.S.C. § 1603(a)'s definition of "foreign state" does not encompass individual officials "because the types of defendants listed are all entities," and "[a] word may be known by the company it keeps.").

Ordinarily, the doctrine instructs that, "where general words follow specific words in an enumeration describing a statute's legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A Sutherland § 47:17, at 364-68 (footnotes omitted). But the doctrine also applies to specific words or phrases following general ones. Id. at 368-70; see also Bd. of Chosen Freeholders v. State, 159 N.J. 565, 576 (1999) ("Under the ejusdem generis principle of statutory construction, when specific words follow more general words in a statutory enumeration, we can consider what additional items might also be included by asking whether those items are similar to those enumerated."); People v. Arias, 195 P.3d 103, 109 (Cal. 2008) (explaining

23

that, "when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated," whether the specific terms follow the general terms used "or vice versa"). The doctrine, in short, seeks to reconcile incompatibility between specific and general words. 2A Sutherland § 47:17, at 381. The relationship between the general and specific words guides "how much broader the act's application should be." 2A Sutherland § 47:18, at 393.

Here, the general phrase of (b)(1)(a) that we consider is "to reduce the likelihood of recurrence of criminal or delinquent behavior." The specific phrases that follow reference compliance with "[i]nternet access conditions," "full or partial restitution," "no contact with the victim," and not owning or possessing an animal "for [an] unlawful purpose" or "interfer[ing] in the performance of duties by a parole officer." An RTP is not like the expressed class of specific conditions. In an RTP, one's liberty is significantly more curtailed than being unable to access certain internet websites, being prohibited from having contact with a specific person, or being barred from possessing an animal. Here, Williams was prohibited from exercising his own free will to leave the RTP. Instead, he was required to serve a minimum term of 180 days at the facility. See State v. Smeen, 147 N.J. Super. 229, 233 (App. Div. 1977) ("We regard custody as denoting an involuntary confinement in

24

either a penal or medical facility, and the critical aspect of involuntariness . . . is . . . defendant's not being at liberty by an exercise of his own will to choose to leave that facility.").

That brings us to the specific limitation embodied in N.J.S.A. 30:4-123.59(d), which provides in pertinent part, that "[t]he appropriate board panel may parole an inmate to any residential facility funded in whole or in part by the State if the inmate would not otherwise be released pursuant to [N.J.S.A. 30:4-123.53] without such placement." (emphases added). Unlike the category of inmates who are eligible for release under the EYWO Act, the Parole Board's release of an adult inmate under the Parole Act is discretionary. N.J.S.A. 30:4-123.53(a). Thus, it can impose participation in an RTP for inmates who are ineligible for administrative release under the EYWO Act. N.J.S.A. 30:4-123.59(d); N.J.S.A. 30:4-123.53(a). Along those lines, the Parole Board admits that N.J.S.A. 30:4-123.59(d) places an additional hurdle that authorizes it to "parole an inmate to a residential facility, rather than denying parole completely, when it concludes that placement [of that inmate] will tip the evidence in favor of a reasonable expectation that the inmate will not violate conditions of parole if released."

Reading the statutes together, to impose an RTP for inmates who are ineligible under the EYWO Act, the Parole Board would generally have to

25

show:  (1) under N.J.S.A. 30:4-123.53(a), that "there is a reasonable expectation that the inmate will violate conditions of parole" pursuant to N.J.S.A. 30:4-123.59; (2) under N.J.S.A. 30:4-123.59(b)(1)(a), that an RTP is "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior"; and (3) under N.J.S.A. 30:4-123.59(d), that "the inmate would not otherwise be released [under N.J.S.A. 30:4-123.53] without such placement."

If N.J.S.A. 30:4-123.59(d) was "inapplicable" and "irrelevant," as suggested by the Parole Board, then it would be easier to impose mandatory "terms" of residential treatment on low-level offenders who qualify for automatic release under the EYWO Act than it is for the Parole Board to impose the same residence "terms" for adult inmates convicted of more serious offenses who are not eligible for administrative parole.  That would be illogical.  The fundamental differences between the streamlined automatic administrative parole release and the process for release under the Parole Act detailed above instead support the view that requiring parolee participation in an RTP is precluded under the EYWO Act.

Unlike under the Parole Act, the EYWO Act applies solely to adult inmates who have been convicted of low-level non-violent offenses, who have behaved well while imprisoned, and who have completed relevant and rigorous

26

rehabilitation programs while serving their prison sentences. The Legislature empowered this category of inmates to earn their way out of prison. Parole release under the EYWO Act is automatic so long as objective criteria are satisfied, and that release cannot be thwarted through imposition of an RTP.

D.

Finally, we consider the Parole Board's policy-based argument that, even though N.J.S.A. 30:4-123-55d(a)(3) requires, among its criteria, that an inmate "complete[] relevant rehabilitation programs," completing a rehabilitation program "within a highly controlled prison environment does not mean that a parolee will not continue to require programming to mitigate the risk of recidivating."

We note first that, in earning his way out, Williams not only participated in A.A. while in prison, but he also received intense residential treatment outside of prison -- while under the custody of the DOC -- at Bo Robinson and the Harbor House. Thus, his rehabilitation plan included treatment outside prison, not solely "within a highly controlled prison environment."

Nevertheless, it is true that the Legislature expressed concern about recidivism and recognized a need to facilitate reentry in enacting the EYWO Act. See Press Release: On Martin Luther King, Jr. Day, Governor Murphy Signs Criminal Justice Reform Legislation (EYWO co-sponsor opining that

27

"[i]t's critical that we stop this woeful pattern [of recidivism] by making sure that these men and women have the . . . resources they need . . . to be productive members of society after leaving prison").

N.J.S.A. 30:1B-6.10(a), for example, provides that the Commissioner of the Department of Corrections and the Chairperson of the State Parole Board "shall coordinate reentry preparation and other rehabilitative services for inmates in all State correctional facilities pursuant to" the EYWO Act. "Appropriate staff within the [DOC] and State Parole Board [are] responsible for engaging with each inmate to develop and implement an individualized, comprehensive reentry plan for services during the inmate's incarceration." Ibid.

A reentry plan is a collaborative effort that occurs before a primary parole eligibility date and can, like here, specifically focus on people who will benefit from substance abuse treatment. The "plan may be refined and updated during incarceration as needed, and shall include recommendations for community-based services prior to the inmate's actual return to the community." N.J.S.A. 30:1B-6.10(a). DOC and Parole Board staff determine which "rehabilitative services shall be incorporated into a comprehensive reentry plan in order to prepare each inmate for successful integration upon release," and the DOC establishes "guidelines, timelines, and procedures to

28

govern the institutional reentry plan process." Ibid. Significant reentry preparation and much-needed rehabilitation services while imprisoned are therefore relevant to eligibility for administrative parole release.

At the same time, however, the Legislature expressly contemplated that residential treatment could be completed during incarceration. A reentry plan's ultimate aim is "to prepare an inmate for successful integration as a productive, law-abiding citizen upon release from incarceration." N.J.S.A. 30:4-123.55c. When hearing officers certify that an inmate "completed relevant rehabilitation programs," as required by N.J.S.A. 30:4-123.55d(a)(3), it is reasonable to conclude that the inmate successfully completed those programs. "Completed" means "to bring to an end and especially into a perfected state." Completed, Merriam-Webster, https://www.merriam-webster .com/dictionary/complete (last visited July 3, 2023). Upon completion of the programming and satisfaction of the additional requirements set forth in N.J.S.A. 30:4-123.55d, the EYWO Act contemplates that adult inmates earn their way out -- subject, of course, to sanctions for violation of parole conditions. And the Legislature has not granted leave to impose an RTP on those inmates who successfully earned their way out through that Act, like Williams.

29

Given his rehabilitative success, a Parole Board panel approved Williams' plan to live with his wife upon release, and a Parole Board evaluator recommended that Williams obtain "outpatient substance abuse counseling[,] [m]andatory random drug testing, [and] [r]egular 12-step program participation." Those "specific conditions" are otherwise enumerated in his Certificate of Administrative Parole Release, and he agreed to abide by them.

In sum, Williams has fully satisfied and complied with the legislatively imposed process for his release, and his continued outpatient rehabilitation can be and has been prescribed by the Board. But the Board's prescriptions must remain within the limits imposed by the Legislature, which do not include an RTP. It is now time for Williams' "successful integration as a productive, law-abiding citizen." N.J.S.A. 30:4-123.55c.

IV.

For the reasons stated, we conclude the Parole Board is statutorily precluded from mandating participation in an RTP for inmates administratively paroled under the EYWO Act, including Williams.

The judgment of the Appellate Division is reversed and the matter is remanded to the Parole Board for any appropriate steps to implement this decision.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE FASCIALE's opinion.